## CALDAROLA v. UNITED STATES.

United States District Court
S. D. New York.

June 8, 1951.

Abraham M. Fisch, New York City, for libelant.

Irving H. Saypol, U. S. Atty., New York City, Kirling, Campbell & Keating, New York City, of counsel, for respondent.

WRIGHT, District Judge.

The issues of fact and law in the above entitled suit having duly come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, I now find and decide as follows:

Findings of Fact

1. Prior to the beginning of this action, the libellant timely commenced an action at law in the Supreme Court of the State of New York against Thor Eckert & Co., which was engaged by the United States to manage and conduct the business of the S.S. Everagra, a vessel owned by the United States.

2. The said action in the State Court was thereafter dismissed solely because the action had been improperly brought against Thor Eckert & Co., instead of the United States of America.

3. At all material times, the S.S. Everagra was owned, managed, operated and controlled by respondent, United States of America, and was registered under the laws of Panama.

4. On January 27, 1944, Peter Caldarola, the libellant, was employed by Jarka Corporation as a longshoreman in the discharge of cargo from No. 3 hatch of the S.S. Everagra to Pier 34, North River, at which pier the vessel was lying with its starboard side toward the dock.

5. The libellant's work was to operate the cargo fall of the Burton or inshore boom. Pagnetto, another longshoreman employed by Jarka Corporation, operated the cargo fall of the up and down or offshore boom. Faggiano, another such longshoreman, operated the steam valve which controlled the movement of the shaft, at each end of which was a drum or niggerhead used by the libellant and Pagnetto. Forte acted as gangwayman in giving signals.

6. The libellant, together with the other men referred to, worked at hatch No. 3

from 10 A.M. until lunch time in discharging cargo from No. 3 hatch to the dock. Each draft of cargo consisted of nine bags of cocoa beans, each bag weighing approximately 140 pounds.

7. After lunch, and during the discharge of the first draft of cargo, which also consisted of nine bags of cocoa beans in a rope sling, the Burton boom broke and the greater part of it fell to the deck, causing the cargo, the cargo falls and the guys which held the boom also to fall to the deck.

8. The libellant was struck on the back of the head by a falling guy or by the broken boom.

9. The Burton boom, which is the boom which broke, was made of wood and, at its lower end or heel, was encased in an iron framework. At the lower end of the framework, and integral with it, was a gooseneck which was attached by a pin to a swivel on a "Sampson" post.

10. The Burton boom was a sound boom before the accident happened and was adequate for bearing the load and strain incidental to transferring the draft which was being discharged at the time of the accident.

11. The Burton boom was not affected by dry rot as claimed by the libellant.

12. The Burton boom was caused to break because one or more of the longshoremen engaged in operating the cargo falls and the steam winch negligently put an excessive and improper strain on the boom.

13. The excessive and improper strain on the boom occurred when the Burton boom was caused to rise so that it was almost parallel with the "Sampson" post, to be twisted in an aft direction, and then, to fall, with the draft of cargo still suspended from it, from its position almost parallel with the "Sampson" post to the position in which it had been before it was caused to rise, as a result of which the boom was caused to break at a point which was near the upper end of the iron framework in which the lower part of the boom was encased. By reason of the twisting referred to herein, the iron gooseneck of the boom was bent out of its proper alignment and in an aft direction.

14. The respondent was not negligent.

15. The S.S. Everagra was not unseaworthy.

16. The longshoremen were negligent and this was the sole cause of the accident to libellant.

### Conclusions of Law

1. Libellant's action against the United States is authorized by the 1950 Amendment to the Suits in Admiralty Act. Public Law 877, 81st Congress, 2nd Session, H.R. 483, approved December 13, 1950, 46 U.S.C.A. § 745.

2. Libellant's injuries were not caused by respondent's negligence nor by any unseaworthiness of the vessel or any of its appliances.

3. Respondent is entitled to a decree dismissing the libel.

Let a decree be prepared in accord with these findings.